FILED
RICHARD W. NAGEL
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

2018 JUL 23 PM 2:48

SOUTHERN DISTRICT OF OHIO

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

EASTERN DIVISION

| | | |
|---|---|---|
| Daniel Teitelbaum, | : | Case No. 2:17-CV-583 |
| Movant | : | |
| v. | : | Judge Watson |
| Warden Neil Turner, | : | Magistrate Jolson |
| Respondent. | : | Habeas Corpus |

### MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Now comes Movant, Daniel Teitelbaum, *pro se*, and respectfully moves this court to issue summary judgment in Movant's favor, vacate all convictions, and grant the Writ of *Habeas Corpus*.

The facts, law, and reasons why Movant should be granted summary judgment are set forth in the Memorandum in Support, below.

1

## MEMORANDUM IN SUPPORT

As explained in Fed. R. Civ. P. 56(a):

> "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Here, in Movant-Petitioner Daniel Teitelbaum's Petition for Writ of Habeas Corpus, claim No. 46, "Petitioner was Denied his 6th Amendment Right to Effective Assistance of Counsel. Defense Counsel Actively Colluded with Prosecution Denying Defendant a Fair Trial," there is no genuine dispute as to any material fact and Movant is entitled to summary judgment as a matter of law.

As Movant wrote in his "Opposition to Review and Recommendation," Objection 2 :

> "Trial Counsel Adam Nemann colluded with state prosecutors in order to hurt his client, Daniel Teitelbaum. That is an undisputed fact. Literally undisputed."

As per Fed. R. Civ. P. 56(c)(1)(A), a party asserting that a fact can not be genuinely disputed must support the assertion by citing to particular parts of materials in the record, including affidavits.

As set forth in the affidavit included with this motion, Movant, in early March 2014, (27 months after his arrest in December, 2011) together with law student Keith Dyer, was able to determine that the gym at which victim Paul Horn had been a member was called "PowerShack Gym," and was located in Grove City, Ohio.

Almost immediately after Movant and Dyer determined the name of Horn's gym, prosecutors (State prosecutor Marla Farbacher and Federal prosecutor Debora Solove) called Detective Bob Moledor and told him to investigate PowerShack Gym in Grove City and to measure the time to drive from that gym to the victim, Paul Horn's, apartment, all of which Detective Moledor promptly did. Here are the relevant portions of the trial record:

2

> Det. Moledor: When I went out and spot-checked this area I found that when I was here at this location, which is PowerShack Gym on Parkmead Drive in Grove City, I found that my phone, if parked on the west side of the building was selecting this tower. But as I moved to the north and south end of this parking lot, my phone reselected to this tower over here. (Tr. 3156-57) (PAGE ID# 4605-06)
>
> Ms. Farbacher: Did you drive from there back to the victim's apartment? (Tr. 3168) (PAGE ID# 4617)
>
> Det.. Moledor: I did. (Tr. 3168)
>
> Ms. Farbacher: How long did it take you?
>
> Det. Moledor: I had times anywhere from just over seven minutes, three seconds, to just around four forty-five, four minutes forty-five seconds, (Tr. 3168) (PAGE ID# 4617)

How is it possible that Teitelbaum and Dyer determine that the gym to which Horn belonged was called "PowerShack Gym," and then a few days later, Detective Moledor is driving around PowerShack Gym measuring cell phone frequencies and drive-times? There is only one possible way. That information was deliberately leaked to the prosecution to allow them to investigate the gym.

As the following exchange demonstrates, the prosecution had never investigated PowerShack Gym prior to Teitelbaum telling Dyer about it:

> Ms. McCaughan: And when did you do those drive tests? Recently? (Tr. 3242) (PAGEID# 4691)
>
> Det. Moledor: Yes, ma'am. I did them just the past weekend. (Tr. 3242) (PAGEID# 4691)

Movant has presented irrefutable proof of collusion between state prosecutors and defense counsel. In fact, this collusion was done so brazenly that defense counsel Adam Nemann became nervous about it and tried to conceal his involvement in the scheme during his closing remarks:

3

> Mr. Nemann: And Mr. Moledor testified. And I don't know what happens behind the scene. But he went out to the scene again to take more measurements the night before he testified, three years later. Why was that? Was it because the State of Ohio had realized that they can't put Paul Horn at his home address at the time they say Dan Teitelbaum was there? (Tr. 3380) (PAGEID# 4930)

The earlier quotes from Detective Moledor prove beyond a reasonable doubt that Defense Counsel Adam Nemann colluded with state prosecutors; but the quote above from Nemann himself makes the proof of collusion air-tight.

First Nemann says, "And I don't know what happens behind the scenes. But…" Making clear that something inappropriate took place behind the scenes. It is also clear the Nemann is trying to conceal his own involvement by claiming that he doesn't know what happened behind the scenes when, in fact, he knows exactly what happened behind the scenes.

After trying to conceal his own involvement in this perfidious act, Mr. Nemann tries to explain away or camouflage the collusion by putting forward a half-baked pseudo-explanation for the collusion. Mr. Nemann asks the rhetorical question, "Was it because the State of Ohio had realized that they can't put Paul Horn at his home address at the time that they say Dan Teitelbaum was there?" Unfortunately for Mr. Nemann, while the inability of the State of Ohio to put Mr. Horn at his home address could, conceivably, explain why Detective Moledor was dispatched at the last minute to go take more measurements, it can not explain how it was that Detective Moledor made a beeline straight to PowerShack Gym on Parkmead Dr. in Grove City. That can only be explained in one possible way: Defense Counsel gave that information to the State of Ohio in order to help them secure a guilty verdict against Teitelbaum.

Movant has just presented air-tight proof of: prosecutorial misconduct, defense counsel misconduct, ineffective assistance of counsel, fraud and collusion.

If all of the above were not bad enough, the Ohio appellate court used this same purloined information to deny Teitelbaum's direct appeal. The appellate court wrote:

> "Detective Moledor testified that cell tower data for Horn's phone showed that at the time of the last phone call from Horn's phone at 8:58 p.m. on March 10, 2011, Horn was not yet back to his

4

apartment but was very close, about four to seven minutes away."
(PAGEID#1194)

Notice that "four to seven minutes" is exactly the duration of Detective Moledor's drives from PowerShack to Horn's apartment. So, the appellate court used the information that was found by Teitelbaum and Dyer in its denial of Teitelbaum's appeal. What is even more ironic than that, though, is that Detective Moledor never claimed that Horn went to PowerShack Gym on the night of March 10th. Moledor just showed up there and began taking measurements without ever giving a reason why. Nobody at trial ever claimed that Paul Horn visited PowerShack Gym on Parkmead Drive in Grove City on the night of March 10th.

This shows that the collusion and deliberate leaking of information by the defense to the prosecution was not harmless. (Note also that the extent of this harm was not apparent when the direct appeal was being written. The full extent of the harm only became apparent when the appellate court denied the appeal.)

Trial counsel Adam Nemann colluded and conspired with state prosecutors in order to hurt his client, Daniel Teitelbaum. This fact has never been disputed by either Respondent or Magistrate Jolson. Movant, therefore, has shown that there is no genuine dispute as to any material fact.

Movant must now show that he is entitled to judgment as a matter of law.

Here, the information in question, the name and location of Paul Horn's gym, was known only by Movant, Daniel Teitelbaum and law student Keith Dyer. This information was confidential and should have been covered by attorney-client privilege. Instead, this information was deliberately leaked to prosecutors so that they could investigate the gym and use the results of their investigation to help them convict Daniel Teitelbaum. This was deliberate intrusion into Movant's attorney-client privilege.

In *United States v. Schwimmer* 924 F. 2d 443, 2d Cir. 1997, the Court wrote:

> "Intentional intrusion into attorney-client relationship warrants
> careful scrutiny but does not requite automatic reversal unless
> conduct of government was manifestly and avowedly corrupt."

5

Here, the state prosecutors' conduct was manifestly and avowedly corrupt. They received purloined information and immediately called Detective Moledor to use that information to help them convict Movant, Teitelbaum. Therefore, Movant is entitled to summary judgment as a matter of law.

Also, in Ohio, a final judgment rendered upon the merits is conclusive of rights only if that judgment was rendered without fraud or collusion. (See *Norwood v. McDonald* 142 Ohio St. 299) In the instant case there was both fraud and collusion by state prosecutors and defense counsel. Therefore, the judgment rendered is void and movant is entitled to summary judgment as a matter of law.

In addition, it should be noted that a Motion for Summary Judgment is a proper procedure to be used in a habeas corpus case. (See *Petition of McShane* 235 F Supp. 262).

Finally, the conduct of defense counsel and state prosecutors is strong circumstantial evidence of Teitelbaum's innocence. It seems highly unlikely that the prosecution would have felt the need to resort to conspiracy and collusion of this nature if they felt they had strong proof of Teitelbaum's guilt. Therefore, it is reasonable to infer that they were very uncertain that they had a winning case against Teitelbaum.

## CONCLUSION

Movant, Daniel Teitelbaum, has shown, using the record and facts set out in an affidavit made on personal knowledge, that defense counsel Adam Nemann colluded with state prosecutors by deliberately leaking privileged, confidential information in order to help prosecutor's secure a conviction against movant.

Defense counsel Adam Nemann then tried to conceal this collusion and camouflage his own involvement in it by deliberately making misleading statements in closing remarks. By so doing, Mr. Nemann made it much more difficult for Movant to piece together the facts necessary to prove collusion. The entire record shows that Movant was denied a fair trial and that summary judgment should be granted with such clarity as to leave no room for controversy and establishes affirmatively that Respondent can not prevail under any circumstances. Summary Judgment should be granted to Movant.

Respectfully Submitted,
Daniel Teit[...]

6

CERTIFICATE OF SERVICE

I, Daniel Teitelbaum, hereby certify that I placed two copies of the foregoing "Motion for Summary Judgment" and accompanying Affidavit in the prison mailbox on July 17, 2018 to be sent by regular US Mail to the following addresses:

Stephanie L. Watson
Principal Asst. Atty. General
150 East Gay St. 16th Floor
Columbus, OH 43215-6001

and

Office of the Clerk
US District Court
Southern District of Ohio
85 Marconi Blvd, Rm. 121
Columbus, OH 43215

_____
Daniel Teitelbaum