# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Daniel Teitelbaum,

    Petitioner,

v.

Neil Turner, Warden,

    Respondent.

Case No. 2:17-cv-583

Judge Michael H. Watson

Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

On May 2, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the petition for a writ of habeas corpus be denied and that this action be dismissed. ECF No. 20. Petitioner, Daniel Teitelbaum, has filed an objection to the R&R. ECF No. 24. Pursuant to 28 U.S.C. § 636(b), this Court has conducted a *de novo* review. For the following reasons, Petitioner's objection, ECF No. 24, is **OVERRULED**. The request for an evidentiary hearing is **DENIED**. The R&R, ECF No. 20, is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

Petitioner has also filed a motion for summary judgment, ECF No. 25, which is **DENIED**.

Furthermore, the Court **DECLINES** to issue a certificate of appealability.

Petitioner challenges his convictions after a jury trial in the Franklin County Court of Common Pleas on aggravated burglary, aggravated murder, and tampering with evidence, with firearm specifications. The trial court imposed a

term of life without the possibility of parole. In this habeas petition, Petitioner raises fifty claims for relief. The Magistrate Judge recommended dismissal of all of Petitioner's claims as procedurally defaulted or without merit. Petitioner objects to the R&R.

### 1. Motion for Summary Judgment

The Court will first address Petitioner's motion for summary judgment, which argues that it is undisputed from the record that his attorney colluded with the prosecution. Specifically, Petitioner points to Detective Moledor's testimony that Moledor went to the PowerShack Gym in Grove City to determine the distance from the PowerShack Gym to Horn's home. Petitioner argues that this testimony establishes that his attorney violated the attorney-client privilege by advising the prosecutor that Paul Horn was a member of the PowerShack Gym in Grove City, which assisted the prosecutor in convicting Petitioner of Horn's murder.

However, the record does not support summary judgment on this basis. In order to obtain summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A), (B). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court views the facts and any inferences that can be drawn from them in the light most favorable to the nonmoving party. *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).

A habeas petitioner who seeks summary judgment must at a minimum satisfy the requirements of Rule 56 of the Federal Rules of Civil Procedure. *Franklin v. Mansfield Corr. Inst.*, No. 3:04–cv–187, 2006 WL 2128939 (S.D. Ohio July 27, 2006) (citing *Blackledge v. Allison*, 431 U.S. 63, 80–81 (1977) and *Browder v. Director*, 434 U.S. 257, 266, n. 10 (1978)). Petitioner has failed to do so here.

Petitioner's allegations in support of his claims of ineffective assistance of counsel and prosecutorial misconduct are not, as Petitioner claims, without dispute. To the contrary, these allegations are based on sheer speculation and are without any record support. Moreover, Petitioner has waived the issue by failing to present it to the state courts. Thus, issuance of summary judgment in Petitioner's favor would not be appropriate on this basis.

Further, the record reflects substantial evidence of guilt. For example, and as discussed by the state appellate court, police used GPS and cell phone tower location data from the cell phones of the Petitioner and Paul Horn to determine their whereabouts during the time period of Horn's death. Tr. at PAGEID ## 4572–4620, ECF No. 14-1. At 8:58 p.m., when Horn last spoke to William Newman, Horn's cellular phone was using a cell tower located near the murder scene, indicating that Horn was close to home. *Id.* at PAGEID ## 4602–03. At that same time, Petitioner had driven a car to a dead end street within walking distance of Horn's home, where he remained until 9:20 p.m., when he traveled to the area of the Waterford Tower condominiums. *See State v. Teitelbaum*, 67 N.E.3d 85, 95 (Ohio Ct. App. 2016). Surveillance footage depicted a man matching Petitioner's general description walking from an area of parked cars to and from the direction of the nearby Main Street Bridge. *Id.* The GPS unit indicated that Petitioner then proceeded to a Walmart store. Surveillance footage obtained from the Walmart depicted Petitioner at 10:57 p.m., wearing a dark colored jacket, jeans, and dark colored shoes. He purchased new clothes, and discarded a white bag in a trash can before returning to his vehicle and driving away. *Id.* at 95–96. Dennis Hopkins, Horns' roommate, discovered Horns' body sometime after 4:00 a.m. that morning. *Id.* at 92. Colin Reedy testified that Petitioner had complained that Horn was cheating him and had taken over $100,000. Petitioner would get the business if Horn died, and Petitioner wanted to get rid of Horn. *Id.* at 96. Petitioner offered Reedy money to

help him kill Horn, and Reedy bought Petitioner a 9 mm semi-automatic handgun. *Id*. at 97. The State introduced incriminating emails from Reedy to Petitioner regarding Petitioner's plan to kill Horn. *Id*. Petitioner told Reedy he had thrown the murder weapon into a river. *Id*. All of the bullets fired at Horn came from the same gun, which had a barrel with characteristics consistent with the gun that Reedy had purchased for the Petitioner. *Id*. at 98.

Thus, the record fails to reflect a basis for issuance of summary judgment in Petitioner's favor, and his motion for summary judgment, ECF No. 25, is **DENIED**.

### 2. Objections to the R&R

Petitioner also objects to the R&R and the decision of the state appellate court. Petitioner asserts that these opinions were unreasonable because he has rebutted the presumption of correctness provided to the factual findings of the state appellate court under 28 U.S.C. § 2254(e) regarding the time of death and his presence in the area at the time of the crime. Petitioner asserts that he is actually innocent, because evidence shows that Paul Horn was killed after midnight, when Petitioner had already left the area. Petitioner further claims that his attorney assisted the prosecution in obtaining a guilty verdict, concealed these actions from him, denigrated defense witnesses, and purposely did not present evidence supporting Petitioner's innocence, such as the lack of rigor mortis of the body and wet blood being inconsistent with the prosecution's theory regarding the time of death.

Petitioner also objects to the Magistrate Judge's recommendation of dismissal of his claims as procedurally defaulted. He argues that the doctrine of procedural default does not apply to certain of his claims which, he contends, involve structural error or his actual innocence. Petitioner argues that he has preserved other claims for review by raising them on direct appeal, or in an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner also objects to the Magistrate Judge's recommendation of dismissal of his claims on the merits.

However, Petitioner does not refer to, and the record does not reflect, any new, reliable evidence not presented at trial that establishes that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt so as to establish a claim of actual innocence. *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (citing *Schulp v. Delo*, 513 U.S. 298, 316–17 (6th Cir. 1995)). Petitioner's argument about alleged flaws in the FBI's DNA database does not assist him.

Additionally, Petitioner did not assert in the Ohio Court of Appeals that he had been denied the effective assistance of counsel based on his attorney's treatment of defense witnesses. *See* Appellant Br. at PAGEID ## 409–21, ECF No. 12-1. Petitioner has therefore waived this claim for review here. Petitioner additionally has waived his claim of the denial of the effective assistance of appellate counsel by failing to file a timely appeal to the Ohio Supreme Court. Ohio does not permit delayed appeals in Rule 26(B) proceedings. Ohio S. Ct.

Prac. R. 7.01(A)(4)(c). Further, even claims of alleged structural error may be subject to procedural default. *See Carruthers v. Mays*, 889 F.3d 273, 289 (6th Cir. 2018) (citing *Hodges v. Colson*, 727 F.3d 517, 540 (6th Cir. 2013)).

The sole claim of ineffective assistance of trial counsel that Petitioner has preserved for review in these proceedings involves his claim that defense counsel improperly failed to argue that Petitioner could not have murdered Horn, because evidence of wet blood and rigor mortis indicated that Horn was killed after midnight, when Petitioner was no longer present in the area. *See* Memo. in Support of Jurisdiction at PAGEID ## 814–15, ECF No. 12-2. However, despite Petitioner's argument to the contrary, the record does not reflect the existence of any additional exculpatory evidence that would have assisted the defense. Petitioner has failed to establish that his attorney violated the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Petitioner waived claims 1, 7–18, 22, 23, 25, 26, 28–32, 34–39, and 43–49 by failing to raise them in the Ohio Court of Appeals. He waived claim 42 by failing to file a timely appeal in post-conviction proceedings. Similarly, he waived claims 4, 31, and 50 by failing to file a timely appeal in Rule 26(B) proceedings.

Petitioner waived claims 5 and 33 by failing to present them to the Ohio Supreme Court. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999)). Petitioner refers to *Medley v. Runnels*, 506 F.3d 857 (9th Cir. 2007), to argue to the contrary, but nothing in *Medley* supports Petitioner's argument that he need not present a

claim to the Ohio Supreme Court in order to preserve it for federal habeas corpus review. Petitioner waived claims 6 and 27 by failing to object at trial, leading the appellate court to only conduct a plain error review. *See Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000) (noting that, in *Engle v. Isaac*, 456 U.S. 107, 124–29 (1982), "the Supreme Court specifically found that default imposed for failure to object contemporaneously . . . is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice.") A state appellate court's plain error review or alternative ruling on the merits does not remove the procedural default. *See Conley v. Warden, Chillicothe Correctional Inst.*, 505 F. App'x 501, 506 (6th Cir. 2012) (citations omitted).

It is the Petitioner's burden to establish cause for a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted). He has failed to do so here. Other claims that Petitioner has procedurally defaulted, *i.e.*, the alleged denial of the effective assistance of counsel, cannot serve as cause for a separate procedural default. See *Johnson v. Turner*, No. 2:14-cv-01908, 2017 WL 2633188, at *2 (S.D. Ohio June 19, 2017) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005)).

Petitioner argues that Ohio's page limitations on appellate briefs establishes cause for his failure to raise claims on direct appeal; however, the record does not support this argument. Petitioner filed a 65-page appellate brief,

raising nine assignments of error. Appellant Br. at PAGEID ## 346–425, ECF No. 12-1. Nothing prevented him from presenting additional claims in his appeal.

Petitioner also asserts, as cause for his procedural default of claim seven, that his claim that the denial of a unanimous jury verdict violates the Eighth Amendment was so novel that he could not have raised it on direct appeal. This argument is not persuasive. "A claim may be held sufficiently novel [to excuse a procedural default] when, at the time of its default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel." *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citations omitted); *see also McBee v. Grant*, 763 F.2d 811, 816 (6th Cir.1985) (a finding of cause on the basis of novelty is inappropriate where "the habeas petitioners had the tools to construct their constitutional claim" (quoting *Engle*, 456 U.S. at 133)). Petitioner had sufficient tools to construct his constitutional claim yet failed to do so. This is not justification for his procedural default.

In claim seventeen, Petitioner asserts that he was denied a fair trial because the prosecutor failed to provide him with the "original" printout of a certain email. *See* Petition 122–23, ECF No. 1-1. Petitioner waived this claim by failing to raise it on direct appeal. As cause for this procedural default, Petitioner states that the prosecutor and defense counsel lied when they indicated that the requested document had been provided to the defense. Obj. 20, ECF No. 24. Petitioner avers that he was prejudiced by the State's failure to produce the "original email printout," because the email evidence had "been tampered with,

edited and modified." Petition 123, ECF No. 1-1. Again, however, these allegations are entirely without support. Petitioner has failed to establish cause for this procedural default.

In claim forty-one, Petitioner asserts that he was denied a fair trial due to the admission of "phony text messages." Petition 183, ECF No. 1-1. Specifically, Petitioner complains that Reedy testified that, on November 28, 2011, he sent two text messages to Petitioner, but phone records show that Reedy sent three messages on that date, and Reedy sent those messages to a phone number that no longer belonged to the Petitioner.[1] Petitioner argues that the prosecutor improperly used this evidence to argue that Petitioner had attempted to flee the country. Nonetheless, Petitioner procedurally defaulted this claim by failing to raise it on direct appeal. In post-conviction proceedings, the trial court stated that the claim was barred from review under Ohio's doctrine of *res judicata*. Decision and Entry at PAGEID # 1015, ECF No. 12-3. Petitioner now argues that he had no adequate remedy under state law to present this claim. Obj. 24, ECF No. 24. However, the issue was a part of the trial record and could have been raised on direct appeal.[2] Moreover, Petitioner never filed a

---

[1] Reedy testified that he sent Petitioner a text message on November 28, 2011, at 1:18 p.m., indicating that his attorney was negotiating a deal with police. Tr. at PAGEID # 3736, ECF No. 14. Reedy sent a follow-up text saying, "Just kidding." *Id.* at PAGEID # 3737. Petitioner did not respond. *Id.* at PAGEID # 3738. Reedy had previously told Petitioner that he had been contacted by the FBI and police and that he was going to have to talk to them. "He said just don't say anything." *Id.* at PAGEID # 3734.
[2] It was brought out on cross-examination that the State had no records that Petitioner ever received the text message referred to by Petitioner and that police had seized Petitioner's cell phone in April. Tr. at PAGEID # 4485, ECF No. 14.

timely appeal of the trial court's decision denying his petition for post-conviction relief.

This Court has carefully reviewed the entire record, and upon so doing, concludes that Petitioner has failed to establish that he is entitled to relief under the standard of review set forth under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). An evidentiary hearing is not required to make this determination or to resolve any of the issues presented.

For these reasons, and for the reasons already well detailed in the R&R, Petitioner's Objection, ECF No. 24, is **OVERRULED**. Petitioner's request for an evidentiary hearing is **DENIED**. The R&R, ECF No. 20, is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court now considers whether to issue a certificate of appealability. *See* 28 U.S.C. § 2255(d). When a claim has been denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, n. 4 (1983)). When a claim has been

denied on procedural grounds, a certificate of appealability may be issued if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Upon review of the record, this Court is not persuaded that reasonable jurists could debate whether petitioner's claims should have been resolved differently or that jurists of reason would find it debatable whether this Court was correct in its procedural rulings. Therefore, the Court **DECLINES** to issue a certificate of appealability.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that the appeal would not be in good faith and that an application to proceed *in forma pauperis* on appeal should be **DENIED**.

The Clerk is **DIRECTED** to enter final **JUDGMENT**.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT